ALFRED W. DOWNEY ET AL., APPELLEES, V. FRANK COY-KENDALL, APPELLANT.

FILED APRIL 8, 1911.   No. 16,358.

1. Judges: EXCESSIVE FEES: ACTION: DEFENSES. A police judge sued under the provisions of section 34, ch. 28, Comp. St. 1909, for taking excessive fees may not justify the taking of such fees by mistake, ignorance, absence of a corrupt motive or the existence of an agreement by the party injured.

2. Statutes: CONSTRUCTION: FEES. Statutes giving fees are to be strictly construed and are not to be extended by implication, and where a complaint is filed against several persons the same fees should be charged as if there were but a single defendant until demand is made for separate trials, and then fees should only be charged for such extra duties as are necessarily caused by such separation.

3. Evidence: DOCKET ENTRIES OF POLICE JUDGE. Ordinarily the entries in the docket of a police judge, made by himself or under his direction, are conclusive evidence in an action against him for charging, demanding and taking excessive fees.

4. Trial: DIRECTING VERDICT. Where at the close of the evidence in a jury trial there is left no question of fact to be determined, it is

not error for the trial court to direct a verdict in favor of the party who under the law of the case is entitled to the judgment.

APPEAL from the district court for Hamilton county: GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*Hainer & Smith* and *C. P. Craft,* for appellant.

*O. A. Abbott* and *J. H. Edmondson, contra.*

BARNES, J.

This case is before us on a second appeal. The former appeal was from a judgment in favor of the plaintiff and resulted in a reversal. The cause was remanded to the district court, where it was tried a second time, and the plaintiff again had a directed verdict and the judgment, from which the defendant has appealed.

The action was brought to recover illegal fees alleged to have been charged and collected by the defendant as police judge of the city of Aurora in certain actions wherein the plaintiff and other members of the commercial club of that city were prosecuted for a violation of the city ordinances, together with the sum of $50 as a penalty for charging and collecting such illegal and excessive fees. There is little or no conflict in the evidence, and it may be said that it appears, without question: That the defendant was police judge of the city of Aurora on the 8th day of January, 1906, at which time a complaint was filed with him charging the plaintiff and seven other persons named with maintaining a building wherein persons were unlawfully permitted to assemble for the purpose of drinking intoxicating liquors. The defendant thereupon issued a warrant for the plaintiff and the seven others charged with him, who were thereafter brought before the defendant, as such police judge. One of the persons thus arrested demanded a separate trial, which was had, and which resulted in a conviction and the imposition of a fine of $50 and costs. Negotiations were

then had for a settlement of the case, and it was finally
agreed that four of the eight persons should plead guilty
of a disturbance of the peace and should each be fined
the sum of $10, and that upon the payment of such fines
and the costs of prosecution the complaint should be dis-
missed.   Pending the negotiations for this settlement, the
city attorney filed another complaint against 24 persons,
including the plaintiff and the other members of the
Aurora commercial club, charging them with a like
offense, and still another complaint against the eight
persons first complained of for disorderly conduct. When
the settlement was effected, defendant estimated the costs
in all ·of the cases at $175.   He arrived at this estimate
by treating the case of each individual defendant in each
of said complaints as a separate and independent cause,
and taxed the costs as if there had been 40 separate cases.
This amount of $175 was paid to the defendant, but there
is a slight dispute as to the manner of its payment; the
defendant contending that he received the gross amount
with the understanding that, if when the costs were ac-
curately ascertained such sum should be insufficient to
liquidate the same, the parties making such payment
would make good the deficiency, and, if such sum proved
more than sufficient, the excess should be returned to
them.   It further appears that so much of defendant's
docket as included the entries in each of those cases was
introduced in evidence upon the trial, and those entries
show conclusively and particularly each step that was
taken from the time of the commencement of the proceed-
ing until the settlement above mentioned was made.   It
thus appears that on the complaint in which eight per-
sons were jointly charged eight separate cases were
docketed; that fees for docketing eight complaints were
taxed and charged against the defendant when, as a mat-
ter of fact, but one complaint was taken; that fees for
issuing eight warrants were taxed and charged when but
one warrant was issued; and that many other items of
excessive and illegal fees were charged and taxed in those

cases. It also appears that the settlement above mentioned was made on January 16, 1906, and upon that day the defendant's docket entry in each of the eight cases closed with the following: "January 16, 1906, at 9:00 A. M. This cause dismissed and costs paid. Frank Coykendall, Police Judge." There was a like entry taxing like fees in all of the other cases. Indeed, that fact is not seriously questioned, for it is said in the defendant's brief in speaking of the amount of illegal fees found by the trial court to have been collected: "We are satisfied that this amount is not correct, and that the costs and fees which the police judge had a right to collect on account of the services rendered by himself and the officers, and the fees to witnesses, exceeded the sum of $94.60; but the fact is there was not due for fees upon these several matters, including the four fines each for $10, the sum of $175, being the amount deposited with the police judge." So it may be said that there is no dispute as to the fact that defendant actually received from the plaintiff and others a larger sum than the legal fees which could be taxed in the several cases which had been brought before him.

It is contended, however, that the defendant was not guilty of the charge of collecting and receiving illegal fees, because of the agreement above mentioned. We are satisfied that the agreement or understanding which is pleaded by the defendant in justification of his action was made or had substantially as claimed by him. Therefore, the main question for our determination is: Does that agreement or understanding constitute a defense to the plaintiff's cause of action? A like question was before this court in *Cobbey v. Burks*, 11 Neb. 157, 38 Am. Rep. 364. In that case we held: "Mistake or ignorance without corrupt intent is no defense in an action on the statutory penalty for an officer taking greater fees than are allowed by law." It appears that Pennsylvania has a statute similar to our own, and a like question was before the supreme court of that state

in *Coates v. Wallace*, 17 Serg. & Rawle (Pa.) 75, and it was said by that court: "The penalty imposed by this act may be incurred by exacting fees, which are supposed at the time to be legally demandable. By the very words of the prohibitory clause the *taking* is the gist of the offense. Ignorance of the law will not excuse in any case; and this principle is applicable, and with irresistible force, to the case of an officer selected for his capacity, and in whom ignorance is unpardonable. The very acceptance of the office carries with it an assertion of a sufficient share of intelligence to enable the party to follow a guide provided for him, with an unusual attention, clearness and precision. On any other principle, a conviction would seldom take place, even in cases of the most flagrant abuse; for pretexts would never be wanting. Sound policy, therefore, requires that the officer should be held to act at his peril, and we are of opinion that the absence of a corrupt motive, or the existence of an agreement by the party injured, furnishes no justification for doing what the law forbids." That language was quoted and approved by this court in the case first above cited. *Leese v. Courier Publishing & Printing Co.*, 75 Neb. 391, was a case where the defendant ordered a transcript in order to perfect an appeal, and as a condition for making such transcript the justice required the defendant to pay him 10 cents for filing the appeal bond, 15 cents for entering it on the docket, and 25 cents for its approval and the memorandum of approval indorsed thereon. A portion of those fees the justice was not entitled to charge or receive, and we said in the opinion in that case: "We entertain no doubt that these charges were made and collected by the plaintiff in error in the utmost good faith, with the conviction that he was entitled to charge and receive the same; however, in doing so he acted at his peril. The statute as applied to the facts in this case is manifestly unjust. It is evident, however, that under the facts there was no course open to the trial court except to direct a verdict for the plaintiff." And a judgment against the justice for the statutory penalty was affirmed.

As above stated, the docket of the police court was introduced in evidence. The defendant is bound by the recitals contained therein, for those entries were made by him, and they conclusively show that he not only taxed the illegal fees in question, but declared over his own signature that they were paid. We therefore conclude that the agreement or understanding relied on by the defendant related to the cases which were commenced subsequent to those founded on the first complaint and is no defense to this action.

It is contended, however, that the trial court erred in not submitting that question to the jury. This contention is not sound because, conceding that the agreement relied on by the defendant was made as claimed, its legal effect was a question for the court, and not one to be determined by the jury.

Finally, defendant insists that the jury should have been allowed to determine the amount of the illegal fees in question. It appears that the docket entries made by the defendant contain all of the items of fees and costs charged and received by him, and it was the duty of the trial court to separate the legal from the illegal charges, and thus ascertain the correct amount of fees which the defendant was entitled to charge and receive. In conclusion, we may say that we are satisfied from an examination of the record that the finding on that question is fully sustained by the evidence, and that the judgment appealed from is the only one which could have lawfully been rendered in this case. Therefore the court did not err in directing a verdict for the plaintiff.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

LETTON, J., not sitting.

REESE, C. J., dissenting.

I cannot agree to the opinion of the majority in this case. I do not think the mere fact that defendant entered

the illegal fees upon his docket is of itself a violation of the statute or creates a cause of action. He may have thought he was entitled to them and so entered them upon his docket, yet that fact alone does not render him liable. His ignorance is no excuse, but it does not of itself create a liability. In order to create a liability for the penalty, or liquidated damages, the officer must take the excessive fees. Defendant did not do this. It is not enough that he "demand" the fee, although defendant did not do even that. It was discovered that a number of men had violated the law. A multitude of arrests followed. For reasons which were deemed proper and right, it was agreed that pleas of guilty should be entered and a light fine imposed, together with taxation of costs in each case. The amount of costs could not be *then* ascertained and taxed. It was agreed that a certain amount of money should be left with the defendant, and, if it should be found not to be sufficient, the deficiency should be made up by the arrested parties. Should the amount be found to be too much, the excess or overpayment should be refunded to them. This was a lawful agreement. It was simply a case of mutual trust and confidence. The amount agreed to be left with defendant was $175. By all rules of law, justice or common understanding it was simply a deposit with him to secure or make certain their payment, and subject to future computation or investigation. He held the deposit, and a short time later requested the attorney who appeared for defendants in the criminal prosecutions to assist in the investigation of the question of the fees in order that the correct amount might be ascertained, but the attorney declined to do so. He then called upon some of the parties themselves to join in the inquiry, but they refused. Nothing was left for him to do but to await their will and pleasure, holding the deposit subject to what might be found to be due. It may be said that there was no agreement that they should assist in the investigation and computation; but the very fact that the agreement was made that the matter should be held open im-

plied their friendly assistance. The case strikes me as one of exceedingly bad faith on the part of the members of the so-called "Commercial Club," and, as expressed by one of them, an effort to "cinch" defendant by reason of his reliance upon their personal honor and integrity, which, as it turned out, proved to be absent. I cannot but look upon the action of the parties and this suit as an unfair, unjust and dishonest proceeding in order to obtain revenge against an officer who, so far as this record shows, sought to discharge his duty and at the same time accommodate the arrested parties so far as he might by a reliance upon their personal honor.

I agree that the fee statutes should be strictly construed as against the officers of the law, and that it is right to enforce its penalties when deserved, but I am far from believing that the law is a trap into which officers may be thus inveigled simply because they rely upon the word of those with whom they are called to deal.

I believe the judgment of the district court should be reversed.